134 Ariz. 122 (1982)
654 P.2d 56
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a Pennsylvania corporation; the Insurance Company of the State of Pennsylvania, a Pennsylvania corporation, Plaintiffs-Appellees,
v.
Karen Lynn RICK, Individually and as Personal Representative of the Estates of Billie Eugene Andrews and Jolene Andrews, deceased; John Leslie Andrews; David Wayne Andrews, by and through his Guardian Karen Lynn Rick; Viola Darlene Catchings, Individually and as Personal Representative of the Estate of Thomas Catchings, deceased; Dawn Marie Catchings, by and through her next friend, Viola Darlene Catchings, Defendants-Appellants. COMPASS INSURANCE COMPANY, a New York corporation, Plaintiffs-Appellees,
v.
Mary SMITH, Individually and as Personal Representative of the Estate of Robert D. Smith, deceased; Sandra A. Connolly, Barbara Black and Robin Smith, Heirs of Robert D. Smith; Gary Emberlin, Individually and as Personal Representative of the Estate of Debbie Emberlin, deceased; Holly Emberlin and Stephen Emberlin, by and through their Next of Friend, Gary Emberlin; Jeffrey D. Carlson and Christopher D. Carlson, by and through their Guardians, Sandra A. Connolly and Robert Connolly; and John O'Hara, Personal Representative of the Estate of David Carlson, deceased, Defendants-Appellants.
Nos. 1 CA-CIV 5374, 1 CA-CIV 6047.
Court of Appeals of Arizona, Division 1, Department A.
November 9, 1982.
*123 Charles M. Brewer, Ltd. by Stuart J. Reilly, Phoenix, for defendants-appellants.
Warner Angle Roper & Hallam by Charles R. Hallam, Phoenix, for plaintiffs-appellees.
*124 OPINION
KLEINSCHMIDT, Judge.
This is a consolidated appeal from two separate declaratory judgment actions which raise identical legal issues. The two main issues raised in each action are: (1) whether a provision in an aviation liability insurance policy excluding coverage to renter-pilots is void as against public policy and (2) whether the exclusionary provisions are ambiguous.
The facts giving rise to the action in 1 CA-CIV 5374 are as follows. On June 13, 1977, Susan Elizabeth McCoy rented a 1972 Cessna aircraft from Precision Helicopter Service, Inc. (Precision) for the purpose of making a round trip pleasure flight from Glendale to Prescott. During an attempted landing at Glendale Municipal Airport, the aircraft, piloted by Ms. McCoy, crashed into a cement truck owned by Allied Concrete, Inc., killing Ms. McCoy, her passengers, Billie Eugene Andrews and Jolene Andrews and Thomas Catchings, the truck driver.
The personal representatives of the Andrews and Catchings estate and heirs of the deceased filed wrongful death actions against numerous defendants including Precision and the Estate of Susan Elizabeth McCoy. Allied Concrete and its insurer also filed suit against Precision and the Estate of Susan Elizabeth McCoy for damages to the cement truck.
The aircraft was owned by Eugene Hill who had leased it to Precision for the purpose of rental on an hourly basis to qualified pilots. At the time of the crash both Hill and Precision were covered by liability policies issued by National Union Fire Insurance Company of Pittsburgh (National), and Precision had an additional insurance policy from The Insurance Company of the State of Pennsylvania (Pennsylvania). National and Pennsylvania brought a declaratory judgment action in Maricopa County Superior Court seeking a determination that Ms. McCoy was not an insured under their policies issued to Precision and Hill. They sought a declaration absolving the companies from responsibility for defending the Estate of Susan Elizabeth McCoy in the lawsuits brought on behalf of the various decedents and heirs.
The trial court entered summary judgment in favor of National and Pennsylvania and this appeal was timely filed on behalf of the decedents' estates and heirs.
Similar circumstances led to the litigation in appeal 1 CA-CIV 6047. On April 16, 1977, David Carlson rented a 1977 Grumann American "Cheetah" Model AA5A, from June's Aviation, Inc. (June's Aviation) for a pleasure flight from Falcon Field in Mesa, Arizona, to Flagstaff, Arizona. The aircraft crashed with Mr. Carlson at the controls and resulted in the deaths of the pilot and his passengers, Robert D. Smith, Debbie Emberlin and Claudia Jean Carlson. The personal representatives of the estates of the deceased passengers filed suit against June's Aviation and the Estate of David Carlson. The defense of these claims was tendered to Compass Insurance Company (Compass) on behalf of the Estate of David Carlson.
Compass filed a declaratory judgment action in Maricopa County Superior Court seeking a determination that David Carlson was not an insured under its policy. At the time of the crash, June's Aviation had in effect a liability insurance policy issued by Compass containing an exclusionary provision identical to those in the policies issued by National and Pennsylvania. The trial court granted Compass's motion for summary judgment, holding that Compass had no liability to defend the Estate of David Carlson. The estates and heirs of the decedents and June's Aviation appealed this decision.
Pursuant to a stipulation of the parties, 1 CA-CIV 5374 and 1 CA-CIV 6047 were consolidated by order of this court. We affirm the decisions of the trial court in both appeals.
Appellants contend that by enacting A.R.S. §§ 28-1747, -1748 and -1749 as part of the statutory scheme regulating aircraft operation, the legislature intended to protect the public from financially irresponsible *125 renter-pilots analogous to the protection afforded the public from automobile renterdrivers pursuant to A.R.S. § 28-324 and the Motor Vehicle Responsibility Act, A.R.S. § 28-1101 et seq. No authority is cited to support this statutory construction and we have found none.[1]
The thrust of A.R.S. § 28-1747 is to make a pilot responsible for his negligence while operating an aircraft.[2] A.R.S. § 28-1748 makes the law of torts applicable to collisions on land applicable to collisions of aircraft in the air and on land.[3] A.R.S. § 28-1749, which the legislature repealed by 1981 Ariz. Sess. Laws, Ch. 27, § 1, requires that commercial flight operators obtain certification from the Aeronautics Division of the Arizona Department of Transportation and maintain minimum liability insurance for death or bodily injury to passengers. The statute does not require that a commercial flight operator, such as Precision and June's Aviation, afford insurance coverage to a renter-pilot for his or her personal liability, but only that the commercial flight operator have minimum insurance against its own liability.[4] A.R.S. § 28-324 clearly requires that persons who are in the business of renting automobiles to others must maintain insurance coverage for the liability of such renter-drivers.[5] Although appellant urges us to make the provisions of A.R.S. § 28-324 applicable to renter-pilots, the statute is expressly limited to motor vehicle owners engaged in the rental of motor vehicles. By its own terms, it does not apply to aircraft.[6]
*126 It is the primary duty of the court to attempt to ascertain the true intent of the legislature at the time it enacted the statute. Bushnell v. Superior Court, 102 Ariz. 309, 428 P.2d 987 (1967). Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion to interpret the statute and courts must follow the meaning of the statute as written. Ross v. Industrial Commission, 112 Ariz. 253, 540 P.2d 1234 (1975); City of Show Low v. Owens, 127 Ariz. 266, 619 P.2d 1043 (App. 1980). The language of A.R.S. § 28-324 is clear and this court will not go outside the language to make it applicable by analogy to renters of aircraft.
A policy argument similar to that raised by appellant was considered by the California Supreme Court in National Insurance Underwriters v. Carter, 17 Cal.3d 380, 131 Cal. Rptr. 42, 551 P.2d 362 (1976). The aviation policy in question there excluded coverage for accidents occurring while the aircraft was piloted by an unqualified pilot as defined by the policy declarations. The defendants in Carter contended that the public policy set forth in the omnibus clause of the California Motor Vehicle Financial Responsibility Act should be read into the Uniform Aircraft Financial Responsibility Act then in effect in California. The California court refused to transfer the public policy objectives set forth in the Motor Vehicle Financial Responsibility Act by analogy stating:
Unlike the statutory scheme considered by us in Wildman, the Uniform Aircraft Financial Responsibility Act * * * contains no expression of a public policy mandating insurance coverage for accidents occurring while the aircraft is piloted by unspecified persons operating the plane with the owner's permission.... [No] public policy is disclosed requiring aircraft owners to provide coverage for all `permissive users' who may operate the aircraft. Wildman and the cases following it speak in the context of a statutory scheme which expressly requires certain coverage to be included in every automobile insurance policy. In contrast, in the absence of any general declaration of public policy mandating coverage of `permissive users' for aircraft, we discern no reason to interfere with the parties' full freedom to contract for coverage on any terms not specifically prohibited by statute.
17 Cal.3d at 387, 131 Cal. Rptr. at 47, 551 P.2d at 367.
Similarly, we find no declaration of public policy in Arizona's statute which mandates coverage of permissive users of aircraft. Therefore, an aircraft liability insurance contract may properly limit the scope of coverage to exclude renter-pilots. See Arceneaux v. State Farm Mutual Auto. Ins. Co., 113 Ariz. 216, 550 P.2d 87 (1976).
Appellants' second major contention is that the policy exclusionary clauses are ambiguous and contrary to the reasonable understanding of laymen who read the policy. They argue that such ambiguity must be construed against the insurance company. See State Farm Mut. Automobile Ins. Co. v. Paynter, 122 Ariz. 198, 593 P.2d 948 (App. 1979); Ranger Insurance Co. v. Phillips, 25 Ariz. App. 426, 544 P.2d 250 (1976).
The following provisions are contained in the policies issued by National, Pennsylvania and Compass to their respective insureds, Precision, Hill and June's Aviation.
Insured. The unqualified word `insured' wherever used in this policy with respect to coverage A, B, C and D, includes not only the Insured but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the express permission of the Named Insured.

*127 The provisions of this paragraph do not apply:
* * * * * *
C. To any person operating the aircraft under the terms of any rental agreement or training program which provides any remuneration to the Named Insured for the use of said aircraft.
Appellants argue that these provisions read in conjunction with the portion of the policies which lists "commercial" use as a permissible use of the aircraft create an ambiguity which must be interpreted against the insurance companies.
While this is a case of first impression in Arizona, numerous other jurisdictions have considered identical or similar provisions in aviation insurance policies. The overwhelming weight of authority has held that such provisions do not create an ambiguity.
In Melton v. Ranger Insurance Company, 515 S.W.2d 371 (Tex.Civ.App. 1974), plaintiffs, who were injured in an aircraft crash involving a renter-pilot, contended that the renter-pilot was an omnibus insured under a policy issued to the fixed-based operator who had rented the aircraft to the pilot. The policy language defining the word "insured" was identical to the policy language set forth in the policies which are the subject of this appeal. Likewise, the "purpose of use" provisions of the Melton policy included "rental to pilots" as a permitted use of the aircraft. The court held that the policy provisions were clear and that no insurance coverage was afforded the renter-pilot. The court stated:
The clause of the policy involved here that defines `insured' spells out who the insureds in the policy are and the plain wording of that part of the policy expressly excludes a `renter pilot' from being insured by the policy.
* * * * * *
We hold that the effect of that clause [purpose of use] is to provide that the loss covered by the policy must arise out of certain named uses, and that one such use is `rental to pilots.' In other words, the purposes provision of the policy merely makes it clear that Van Enterprises, Inc.'s [named insured's] coverage for its negligence as a lessor not in possession of the plane is not forfeited by permitting a renter pilot to use the plane. This clause further permits the named insureds to recover under the policy for damage to the airplane itself in instances when such damage is sustained while the aircraft is in the hands of a renter pilot. It is not the purpose or the effect of the Purposes of Use provisions of this policy to designate who is or is not an insured under the policy.
* * * * * *
We hold that the provisions involved were not intended to and do not make a renter pilot an insured under the policy.
Melton, supra, 515 S.W.2d at 374.
Numerous other jurisdictions have likewise found that there is no inconsistency between a declaration that rental to pilots is a permissible use and the renter-pilot exclusionary clauses contained in those policies. See Crawford v. Ranger Ins. Co., 653 F.2d 1248 (9th Cir.1981); Levra v. National Union Fire Insurance Company of Pittsburgh, 99 Idaho 871, 590 P.2d 1017 (1979); Jahrman v. Valley Air Park, Inc., 333 So.2d 712 (La. App. 1976); Ranger Insurance Company v. Silverthorn, 553 S.W.2d 530, (Mo. App. 1977); Greemore v. American Home Assurance Co., 113 N.H. 250, 305 A.2d 681 (1973); Saliba v. American Policyholders Insurance Company, 158 N.J. Super. 48, 385 A.2d 328 (1976), aff'd 157 N.J. Super. 476, 385 A.2d 239 (1978); Buestad v. Ranger Insurance Company, 15 Wash. App. 754, 551 P.2d 1033 (1976).
Appellants rely upon Martin v. Ohio Casualty Insurance Company, 9 Mich. App. 598, 157 N.W.2d 827 (1968) to support their contention that the exclusionary provision in question is ambiguous. Under a policy containing an exclusion for rental pilots in the printed definition of "insured" and a purpose of use clause checked as "commercial", which permitted rental of the aircraft to pilots, the court concluded that a renter-pilot was an insured. Appellants further rely upon Wzontek v. Zurich Insurance Company, *128 418 Pa. 30, 208 A.2d 861 (1965) in which a Pennsylvania court reached the same result as the Michigan court in Martin and extended coverage to a renter-pilot, despite the exclusionary provision of the printed policy, basing its opinion on the inclusion of rental as a purpose of use under the declaration.
We note that the decisions in these two cases have been expressly rejected by the courts in Melton v. Ranger Insurance Company, supra; Ranger Insurance Company v. Silverthorn, supra and Buestad v. Ranger Insurance Company, supra. Martin and Wzontek were impliedly rejected by the courts in Levra v. National Union Fire Insurance Company of Pittsburg, supra; Jahrman v. Valley Airpark, Inc., supra and Greemore v. American Home Assurance Company, supra.
We likewise reject the reasoning in Martin and Wzontek and find that there is no ambiguity in the policy provisions with respect to coverage of renter-pilots. We agree with the conclusion reached by the Missouri Court of Appeals in Ranger Insurance Company v. Silverthorn, supra at 534 in finding that:
The declarations do state what uses of the aircraft will be covered under the insurance provided, but, other than showing the named insured, the declarations do not purport to define who, other than that entity, is entitled to the benefit of the insurance provided for the covered uses. Insofar as persons other than the named insured are concerned, the terms of the policy defining to whom protection will be extended must be looked to. In extending coverage to persons other than the named insured, the policy clearly and unequivocally excludes `any persons operating the aircraft under the terms of any rental agreement * * * which provides remuneration to the Named Insured for the use of said aircraft.'
The `Purpose[s] of Use' which includes rental to pilots provides coverage to the named insured for liability which might be imposed upon it arising out of such use of the aircraft. The parties to the contract of insurance were under no obligation to provide coverage for the rental-pilots and by the terms of the policy elected not to do so. There can be no question as to their right so to contract.
Finally, we consider appellants' contention that the mere fact that different jurisdictions have reached different conclusions with respect to the policy provisions in question requires us to find that an ambiguity exists. Appellants cite Federal Insurance Company v. P.A.T. Homes, Inc., 113 Ariz. 136, 547 P.2d 1050 (1976) in support of this proposition. However, in Outdoor World v. Continental Cas. Co., 122 Ariz. 292, 594 P.2d 546 (App. 1979) and Thompson v. Government Employees Insurance Co., 122 Ariz. 18, 592 P.2d 1284 (App. 1979), this court explained that Federal Insurance Company v. P.A.T. Homes, Inc. does not require an automatic finding by an appellate court that ambiguity exists by virtue of different jurisdictions reaching different conclusions regarding the interpretation of similar language in insurance policies. Rather, these cases hold that such a conflict is merely a strong indication of ambiguity and that each court must examine the facts of each case and make the determination for itself. Having examined the policies in question, we find that they are not ambiguous.
The construction of an insurance contract is a question of law for the court, Coombs v. Lumberman's Mutual Casualty Company, 23 Ariz. App. 207, 531 P.2d 1145 (1975), and courts should enforce the insurance contract as made. The insurer should be required to pay damages only on claims intended to be insured against and to answer only for risks intended to be assumed. Queen Insurance Co. v. Watson, 31 Ariz. 340, 253 P. 440 (1927); Harbor Ins. Co. v. United Services Auto Ass'n., 114 Ariz. 58, 559 P.2d 178 (App. 1976). It is not the prerogative of the court to create ambiguities where none exist or to rewrite the contract in an attempt to avoid harsh results. Mission Ins. Co. v. Nethers, 119 Ariz. 405, 581 P.2d 250 (App. 1978); Lawrence v. Beneficial Fire and Casualty Insurance Company, 8 Ariz. App. 155, 444 P.2d 446 (1968).
*129 Having found that the exclusion of renter-pilots from coverage in an aviation insurance policy does not violate public policy of the State of Arizona and that the exclusionary provisions in question are not ambiguous, we affirm the judgments of the trial court.
OGG, P.J., and CORCORAN, J., concur.
NOTES
[1] National and Pennsylvania have correctly pointed out that this policy argument was not raised before the trial court and should not be considered on appeal. We agree. See Sullins v. Third and Catalina Const. Partnership, 124 Ariz. 114, 602 P.2d 495 (App. 1979). However, this argument was raised at trial in 1 CA-CIV 6047. Therefore, we address the issue in this consolidated appeal.
[2] A.R.S. § 28-1747 provides:

Each pilot is responsible for damage to a person or property caused by aircraft directed by him or under his control which results from the negligence of the pilot, either in controlling the aircraft or while giving instructions to another, and if the pilot is the agent or employee of another, both he and his principal or employer shall be responsible for the damage.
[3] A.R.S. § 28-1748 provides:

The liability of the owner of one aircraft to the owner of another aircraft or to aeronauts or passengers on either aircraft, for damage caused by collision on land or in the air shall be determined by the law applicable to torts on land.
[4] A.R.S. § 28-1749, in effect when Susan Elizabeth McCoy and David Carlson were involved in the crash of their respective airplanes, provided:

A. No person may act as a commercial flight operator in this state unless certificated to do so by the division of aeronautics, except scheduled air carriers certified by the civil aeronautics board and aerial applicators. The division of aeronautics shall require that the applicant meet the federal regulations to comply with the requirements of air taxi or commercial operator certificate. In addition the applicant or operator shall carry minimum insurance of fifty thousand dollars for death of or bodily injury to each passenger carried, and fifty thousand dollars for death of or bodily injury to other persons, and fifty thousand dollars for property damage, each of which amounts shall be applicable to and arise out of one occurrence.
B. Failure of an operator to comply with any of the provisions of subsection A shall result in revocation of certificate.
C. For purposes of this section, unless the context otherwise requires:
1. `Commercial flight operation' means the carrying of persons or goods for hire, including the conducting of flight instruction for compensation.
2. `Commercial flight operator' means a person who conducts commercial flight operations.
[5] A.R.S. § 28-324 provides in pertinent part:

A. No owner engaged in the business of renting, or who intends to rent, a motor vehicle without a driver, shall be permitted to register the motor vehicle until he has procured public liability insurance with an insurance company approved by the insurance department of this state insuring the renter thereof against liability arising from his negligence in the operation of the rented vehicle . .. .
[6] The definitions applicable to Title 28 are contained in A.R.S. § 28-101 and clearly exclude aircraft from the meaning of the term `motor vehicle.' This statute provides in part:

25. `Motor vehicle' means any self-propelled vehicle but, for the purposes of the laws relating to the imposition of a tax upon motor vehicle fuel, the term means any vehicle operated on the highways of this state which is propelled by the use of motor vehicle fuel.
56. `Vehicle' means a device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.